# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:21-cr-00306-GMN-NJK |
| vs. | ) | |
| | ) | **ORDER** |
| EMERALD RUTH WILSON-BEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is the Motion for District Judge Review of Magistrate Judge's Detention Order, (ECF No. 23), filed by Defendant Emerald Ruth Wilson-Bey ("Defendant"). The Government filed a Response, (ECF No. 26), and Defendant filed a Reply, (ECF No. 28).

For the reasons discussed below, Defendant's Motion for District Judge Review of Magistrate Judge's Detention Order is **DENIED**.

## I.    BACKGROUND

Defendant is charged with seven counts of Cyberstalking in violation of 18 U.S.C. § 2661A(2)(B).  The Government alleges that Defendant made threatening communications to several government officials after the United States Department of Housing and Urban Development denied her discrimination complaint. (Resp. 2:8–3:4, ECF No. 26); (Mot. District Judge Review ("Mot. Review") 2:15–18, ECF No. 23).  Specifically, the Government proffers that Defendant intimidated her victims by demonstrating knowledge of their private and personal information, such as the location of their residences, contact information, and the identities of their friends and families. (Resp. 2:8–3:4).  Defendant allegedly sent photos of a gun to the victims, accompanied by rhetoric affirming her willingness to use the firearm if necessary and reminding them about law enforcement officials who have died in the line of duty. (*Id.*).  Defendant also allegedly filed false reports of child abuse against her victims with

state child protective services. (*Id.*).  The Government alleges that Defendant's communications demonstrate her intent to continue harassing the victims. (*Id.*).

On December 22, 2021, Defendant was arrested in the Southern District of Indiana. (*See* Arrest Warrant Returned Executed, ECF No. 8).  On January 26, 2022, Defendant made her initial appearance in the District of Nevada before Magistrate Judge Nancy J. Koppe, who ordered Defendant detained as both a flight risk and a danger to the community. (*See* Mins. Proceedings, ECF No. 9); (Order of Detention, ECF No. 17).  Defendant now moves for review of her Detention Order under 18 U.S.C. § 3145(b). (*See generally* Mot. REview, ECF No. 23).

## II.   <u>LEGAL STANDARD</u>

Title 18 U.S.C. § 3145(b) provides that "[i]f a person is ordered detained by a magistrate judge . . . the [detained] person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  The district judge reviews the magistrate judge's decision *de novo*, but the "court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990).  The standard of review for pretrial detention orders is one of deference to the [magistrate judge's] factual findings, absent a showing that they are clearly erroneous, coupled with an independent review of the facts, the findings, and the record to determine whether the order may be upheld. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985)).  The district judge must ultimately make her own *de novo* determination of the facts and of the propriety of detention. *Koenig*, 912 F.2d at 1193.

## III.   <u>DISCUSSION</u>

Defendant argues that she should be released pending trial for two reasons: (1) the detention hearing was not properly held because none of the conditions authorizing a detention hearing under 18 U.S.C. § 3142(f) were met; and (2) even if the detention hearing was properly

held, Defendant should not have been detained because there are conditions that could reasonably assure Defendant's appearance and the safety of the community. (Mot. Review 8:3–10:9, 10:10–16:6). The Government maintains that the detention hearing was properly held and that Defendant should remain detained because she is a flight risk and presents a danger to the community. (Resp. 6:15–8:5, 8:6–13:20, ECF No. 26).[1] The Court will first address whether the detention hearing was properly held, before turning to the merits of Defendant's detention.

## A. Review of Detention Hearing

Under 18 U.S.C. § 3142(f), the Government may move for a detention hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community when the case involves: (1) a crime of violence with a maximum term of imprisonment of ten years of more; (2) an offense carrying a maximum sentence of life imprisonment or death; (3) an offense with a maximum term of imprisonment of ten years or more under the Controlled Substances Act or the Controlled Substances Import and Export Act; (4) any felony if the person has previously been convicted of two or more enumerated offenses; (5) any felony that is not otherwise a crime of violence that involves a minor victim or the possession or use of a firearm; (6) a serious risk the defendant will flee; or (7) a serious risk that the defendant will obstruct or attempt to obstruct

---

[1] The Government also argues that Defendant's Motion should be denied as untimely. (Resp. 4:6–6:14, ECF No. 26). 18 U.S.C. § 3145(b) allows a person detained by a United States magistrate judge to challenge their detention by filing a motion with the district judge; but § 3145(b) does not set a deadline by which such a motion must be filed. Local Criminal Rule 12-3 requires that a motion challenging a magistrate judge's detention order under § 3145(b) must be filed "without undue delay." Federal Rule of Criminal Procedure 59(a) requires that any objection to a magistrate judge's order on a non-dispositive motion that was referred to them by the district judge must be filed within 14 days. The Government argues that Rule 59(a)'s 14-day time limit applies to motions challenging a magistrate judge's detention order, and thus, Defendant's Motion is untimely because it was filed 23 days after she was detained. (*See* Resp. 4:6–6:14).

Because the Court denies Defendant's Motion on the merits, it need not address whether the Motion was timely. However, the Court notes that the Government has not provided any Ninth Circuit authority to support the proposition that Rule 59(a)'s 14-day time limit for objecting to a magistrate judge's *order on a non-dispositive referred motion* also applies to motions challenging detention under § 3145(b).

justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a

prospective witness or juror.  In the present case, the Government identified two bases under §

3142(f) to justify holding a detention hearing: (1) Defendant's case involves a serious risk that

Defendant will threaten, injure, or intimidate or attempt to threaten, injure, or intimidate

prospective witnesses (*see* 18 U.S.C. § 3142(f)(2)(B)); and (2) Defendant's cyberstalking case,

which is a felony that is not otherwise a crime of violence, involves the possession or use of a

firearm (*see* 18 U.S.C. § 3142(f)(1)(E)).  The Court finds that the Magistrate Judge properly

held a detention hearing under both provisions.

      The underlying conduct for the charged cyberstalking offenses in this case involves the

threatening of government officials.  Therefore, potential witnesses in the prosecution of this

case likely include the cyberstalking victims themselves, who allegedly have already been

threatened by Defendant.  Defendant argues that none of the communications alleged by the

Government were done in an attempt to prevent or obstruct a legal proceeding. (Mot. Review

9:12–17); (Reply 5:18–20).  However, the communications provided by the Government as

evidence in this case, including an email that appears to be sent from Defendant's account and

includes a photo of a gun, demonstrate by a preponderance of the evidence that there is a

serious risk that Defendant may attempt to further communicate with, and threaten or

intimidate, the witnesses that she has already allegedly threatened. *See United States v.*

*Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (the court "must first determine by a preponderance

of the evidence . . . that the defendant has either been charged with one of the crimes

enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of

justice."); (Emails, Ex. A to Resp., ECF No. 26-1).  Accordingly, the Magistrate Judge properly

conducted a detention hearing under § 3142(f)(2)(B) because there is a serious risk that

Defendant will threaten, injure, or intimidate or attempt to threaten, injure, or intimidate

prospective witnesses.

Similarly, the Magistrate Judge properly conducted a detention hearing under 18 U.S.C. § 3142(f)(1)(E) because Defendant's alleged cyberstalking involved the possession of a firearm.  As discussed above, the Government provided evidence of an email sent from Defendant's email account that included a threatening photo of a gun. (Emails, Ex. A to Resp., ECF No. 26-1).  In the photo, the gun is sitting on top of a sheet of notebook paper with the handwritten label: "7/23/21 @ 1:20 P.M. PDT." (*Id.*).  The email was sent on July 23, 2021, at 1:23 P.M. PDT. (*Id.*).  This seemingly demonstrates that Defendant herself took the photo of the gun right before sending the email.  Defendant argues that the evidence provided by the Government only demonstrates that Defendant possessed a photo of a gun and does not prove that Defendant possessed an actual gun. (Mot. Review 9:3–11); (Reply 5:2–16, ECF No. 28).  However, the Government need only show by a preponderance of the evidence that Defendant possessed a gun, and based on the email, attached photo, and accompanying labeling, the Court finds that it is more likely than not that Defendant possessed the pictured gun. *See Friedman*, 837 F.2d at 49.  As such, Defendant's detention hearing was properly conducted under 18 U.S.C. § 3142(f).[2]

## B.  Review of Detention Order

Pursuant to 18 U.S.C. § 3142, a judicial officer may order detention of an individual before trial if "no condition or a combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1).  A judicial officer shall also consider additional factors "in determining whether there are conditions of release that will reasonably assure the appearance

---

[2] While the cases surveyed by this Court regarding detention hearings held under 18 U.S.C. § 3142(f)(1)(E) generally involve a crime with possession or use of a firearm as an element, such as felon in possession of a firearm, Defendant does not allege that in order to invoke 18 U.S.C. § 3142(f)(1)(E), the charged crime must include the possession or use of a firearm as an element. *See, e.g.*, *United States v. Whitlock*, No. CR-11-0736-PHX-DGC, 2011 WL 1843007 (D. Az. May 13, 2011) (Dealing in Firearms Without License); *United States v. Valles*, No. 1:08-cr-0125-OWW, 2008 WL 2262620 (C.D. Cal. May 30, 2008) (Felon in Possession of a Firearm).

of the person as required and the safety of . . . the community." *See* 18 U.S.C. § 3142(g). These factors include: (1) the nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of danger to the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g)(1)–(4). The Government must demonstrate, by a preponderance of evidence, that "no condition or combination of conditions will reasonably assure" the defendant's appearance. *Motamedi*, 767 F.2d at 1407.

In the present case, the Court finds that Defendant poses both a flight risk and a danger to the community, and thus, should remain detained pending trial. First, the Court agrees with the Magistrate Judge that Defendant is a flight risk because she has no verified ties to this, or any other community. Defendant moved away from Las Vegas in September 2021 and has only been living at her current address in Indiana for a few months; an address which, based on Defendant's most recent letter to the Court, may no longer be available since the lease expired. (Letter at 4, ECF No. 38). The Pretrial Services Report confirms that Defendant is estranged from her entire family, and thus, has no familial ties to this or any community. (Pretrial Services Report at 1). Additionally, Defendant admits that she has used different aliases, birthdates, and social security numbers in her past interactions with law enforcement. (*See* Recording of Detention Hearing 35:30–36:18, Ex. A to Mot. Review, ECF No. 23). Finally, the lack of verifiable information about Defendant's employment status, financial situation, or mental health history further supports a finding that no condition or combination of conditions could reasonably assure her appearance. (*See generally* Pretrial Services Report).

Second, if released, Defendant would present a danger to the community. As the Magistrate Judge pointed out in her Detention Order, "even though the weight of the evidence is the least important factor the Court considers, the weight of the evidence in this case is very strong." (Detention Order at 3, ECF No. 17). The evidence provided by the Government thus

far demonstrates that Defendant has likely harassed and threatened numerous government officials, some of whom now fear for their safety and for the safety of their children because Defendant's communications boast that she knows the identities of her victim's family members and the locations of their residences. (*See* Recording of Detention Hearing 12:16–13:51, Ex. A to Mot. Review, ECF No. 23).  The Government's remarks at the detention hearing establish an escalating pattern of Defendant's violent rhetoric, including threats that she would harm her own daughter.[3]  The Court agrees with the Government that continued escalation upon release could lead to physical violence against these victims.  However, even if Defendant would not necessarily seek to physically harm her victims, physical harm is not the only kind of harm that detention protects against. *Cf United States v. Rahman*, No. 2:15-cr-178-GMN-GWF, 2020 WL 5042782, at *5 (D. Nev. Aug. 24, 2020) ("economic danger . . . falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act.").  Defendant can still harm her victims by harassing, threatening, and falsely reporting them to child protective services, which can be done easily by phone or internet, even if supervised, and she has stated her intent to continue doing so.[4]  Further, according to Pretrial Services, Defendant has previously been convicted of two violent crimes (assault) and currently has a temporary protection order for workplace harassment entered against her. (Pretrial Services Report at 4).  Therefore, the Court finds that the Government has shown by clear and

---

[3] The Government reports that United States Secret Service agents contacted Defendant after she filed a civil lawsuit against various high ranking Department of Justice officials.  Defendant stated to the agents in an email: "I'm gonna have to come to the White House with a loaded weapon if I cannot protect my children. I will have to kill my children quickly and try to do something at the White House to draw attention to us so the world will know we are in danger. I will need to shoot at you, OK?" (*See* Recording of Detention Hearing 26:52–27:56, Ex. A to Mot. Review, ECF No. 23).

[4] In one email to her victims, Defendant stated: "I intend to invade your privacy. I intend to exploit information I have learned about you.  I intend to stage protests at your residence and the residence of your families . . . for an indefinite period of time" (Recording of Detention Hearing 11:50–12:14, Ex. A to Mot. Review, ECF No. 23).

convincing evidence that no condition or combination of conditions can be fashioned to reasonably ensure the safety of the community if Defendant were to be released.[5]

**V.      CONCLUSION**

      **IT IS HEREBY ORDERED** that Defendant's Motion for District Judge Review of Magistrate Judge's Detention Order, (ECF No. 23), is **DENIED**.

      **IT IS FURTHER ORDERED** that Defendant's Unopposed Motion to Withdraw Defendant's Motion to Withdraw Motion for District Judge Review, (ECF No. 37), is **GRANTED**.[6]

      **IT IS FURTHER ORDERED** that Defendant's Motion to Withdraw Motion for District Judge Review, (ECF No. 30), is **DENIED as moot**.

      **DATED** this __25__ day of April, 2022.


_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[5] Defendant has continually emphasized that she should not be detained because she is the caretaker of her four-year-old daughter, who is currently in Indiana state custody and will remain there if Defendant is not released. However, Defendant's concern for her daughter, while understandable, does not mitigate the fact that she is both a flight risk and a danger to the community, especially when considering that her own daughter has been the subject of her violent threats. (*See supra* n.3).

[6] Even though she is represented by counsel, Defendant filed with the Court a handwritten Motion to Withdraw her Motion for District Judge Review of the Magistrate Judge's Detention Order based on a disagreement with her attorney, Assistant Federal Public Defender Katherine Tanaka. (*See* Mot. Withdraw, ECF No. 30).  However, Ms. Tanaka is no longer associated with this case, and Assistant Federal Public Defender Keisha Matthews now represents Defendant. (*See* Notice of Appearance, ECF No. 29).  As such, Defendant subsequently filed a Motion to Withdraw her Motion to Withdraw, stating that she "was able to reconcile her concerns regarding previous filings by defense counsel." (*See* Mot. Withdraw 1:18–20, ECF No. 37).